IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE JOHNS HOPKINS UNIVERSITY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALCON LABORATORIES, INC. and<br>ALCON RESEARCH, LTD.<br><br>　　　　　Defendants. | C. A. No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, The Johns Hopkins University ("JHU"), by its attorneys, brings this Complaint for patent infringement against defendants Alcon Laboratories, Inc. ("Alcon Labs") and Alcon Research, Ltd. ("Alcon Research," and collectively with Alcon Labs, "Alcon"). JHU alleges as follows:

### NATURE OF THE ACTION

1.　This is a civil action arising out of Alcon's patent infringement in violation of the Patent Laws of the United States, 35 U.S.C. §§ 271 and 281-285.

### THE PARTIES

2.　JHU is a Maryland not for profit corporation having its principal place of business at 3400 N. Charles Street, Baltimore, Maryland 21218.

3.　On information and belief, Alcon Labs is a Delaware corporation having its principal place of business at P.O Box 6600 S4-1, Fort Worth, Texas 76115 or 6201 South Freeway, Fort Worth, Texas 76134.

4. On information and belief, Alcon Research is a Delaware corporation having its principal place of business at 350 N Saint Paul St., Dallas, Texas 75201 or 6201 South Freeway, Fort Worth, Texas 76134.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over JHU's patent infringement claims under 28 U.S.C. § 1331 and 1338(a).

6. This Court has personal jurisdiction over Alcon Labs and Alcon Research because both are Delaware corporations.

7. Upon information and belief, Alcon is doing business in this judicial district, providing an additional basis for the Court's exercise of personal jurisdiction over Alcon.

8. Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

## THE INVENTION AT ISSUE

9. Since its founding in 1876, JHU's aim has been "the encouragement of research and the advancement of individual scholars, who by their excellence will advance the sciences they pursue, and the society where they dwell."

10. Dr. Eugene de Juan Jr. is a world renowned retinal surgeon and one of the named inventors of the patent-at-issue in this case. In 1992, Dr. de Juan joined the faculty of JHU as a professor. Dr. de Juan was subsequently appointed the Joseph E. Green Professor of Ophthalmology at the Wilmer Eye Institute at the JHU School of Medicine. Dr. de Juan also became a co-director of the JHU Vitreoretinal Service and the director of JHU's Microsurgery Advanced Design Laboratory ("MADLAB").

11. Dr. de Juan and his co-inventors (Messrs. Terry Shelley, Aaron Barnes and Patrick Jensen) working at JHU's MADLAB developed the sutureless ocular surgical technique

and instruments at issue in this case. Helping to fulfill JHU's aim, the patented technique and instruments allow for surgery on the eye without traditional incisions and without sutures. The patented surgical technique and instruments are referred to as "small gauge," due to the incredibly small size of the surgical instruments (often less than 0.5 mm in diameter) inserted into the patient's eye. Compared to the traditional 20-gauge technique, the patented surgical technique and instruments allow for better fluidic stability, faster visual improvement, improved patient comfort and reduced conjunctival damage. Specifically, the patented technique and surgical instruments did away with the need for surgeons to dissect and retract the membrane (the conjunctiva) that covers the whites of the eye (the sclera). The patented surgical technique and instruments also largely eliminated the need to suture the conjunctiva back together at the conclusion of surgery.

12. JHU's MADLAB was funded in part by Bausch & Lomb ("B&L"). B&L was, and still is, a competitor of Alcon in the field of the patented technology. B&L licensed the patented surgical technique and instruments from JHU. B&L developed a platform of products, including the Millenium™ TSV25™ system, to allow surgeons to use the patented surgical technique and instruments. Alcon initially disparaged the patented surgical technique and instruments through its paid surgical consultants. However, when the advantages of the patented surgical technique and instruments became undeniable and its widespread adoption by surgeons inevitable, Alcon quickly adopted it. Unlike B&L, Alcon has never received a license to practice the patented surgical technique and instruments and has never paid royalties to JHU for the right to use the patented surgical technique and instruments.

13. Alcon's promotional documents and Internet website tout the benefits of the patented surgical technique and instruments. Alcon refers to the patented surgical technique and

instruments as "the micro-incision advantage" or "the ALCON® MIVS® platform." The patented surgical technique and instruments have substantially displaced the long-entrenched 20 gauge technique and tools previously promoted and sold by Alcon and others. In contrast to the patented surgical technique and instruments, the 20 gauge technique and tools required surgeons to dissect the conjunctiva to access the sclera. The 20 gauge technique consequently required surgeons to suture closed the incisions in both the sclera and the conjunctiva at the end of the surgery. Alcon's comparison of the two techniques can be found at the following Internet address: https://www.myalcon.com/products/surgical/mivs/index.shtml and is reproduced below.




14. Within less than a decade of its commercial introduction by B&L and Alcon, the patented surgical technique and instruments became the *de facto* standard for performing many surgical procedures on the eye. Alcon has profited immensely from its exploitation of the patented surgical technique and instruments. Not being "burdened" with the need to pay for the use of JHU's patent rights, Alcon quickly took market share from B&L. Consequently, royalties paid to JHU by B&L were significantly diminished.

15. JHU uses royalty payments from commercial entities for technologies developed by its researchers to fund JHU's ongoing research mission.

## COUNT 1 – INFRINGEMENT OF THE '848 PATENT

16. JHU incorporates and realleges Paragraphs 1-15 of this Complaint as if repeated verbatim in this Paragraph.

17. On July 18, 2006, the United States Patent and Trademark Office issued United States Patent Number 7,077,848 B1 ("the '848 Patent") to Eugene de Juan, Jr., Terry H. Shelley, Aaron C. Barnes and Patrick S. Jensen. The '848 Patent is entitled "Sutureless Occular Surgical Methods and Instruments for Use in Such Methods." A true and correct copy of the '848 Patent is attached to this Complaint as Exhibit A. The '848 Patent remains in force and is assigned to JHU.

18. Alcon has made, used, offered for sale, sold in and/or imported into the United States medical instruments used in ophthalmic surgery. As relevant here, these medical instruments include, among others, the "ALCON® MIVS® platform", 25+® Series Products, EDGEPLUS® Valved Trocar Blade and Cannula systems and Grieshaber® tools (the "Accused Products"). Alcon has infringed, induced infringement and/or contributed to infringement of one or more claims of the '848 Patent by at least encouraging and promoting the use of the Accused Products in the performance of at least its Micro-Incision Vitrectomy Surgery (MIVS) technique (the "Accused Technique"). Alcon's infringement is ongoing.

19. On information and belief, Alcon knew of the '848 Patent at the time it began infringing the '848 Patent. Alcon has sold and/or offered for sale the Accused Products to hospitals and surgeons. Alcon actively encouraged surgeons to use the Accused Products in the performance of the Accused Technique. On information and belief, Alcon knew or should have

known that surgeons using the Accused Products to perform the Accused Technique would directly infringe the claims of the '848 Patent.  On information and belief, Alcon induced infringement in violation of 35 U.S.C. §271(b) by selling the Accused Products and encouraging surgeons to perform the Accused Technique with the specific intent of encouraging surgeons to infringe the claims of the '848 Patent without a reasonable, good faith belief that its actions did not induce infringement.

20. Alcon's inducement of infringement arises, at least in part, because Alcon encourages surgeons to use the Accused Products to perform the surgical method claimed by the '848 Patent.

21. The surgical method Alcon encourages surgeons to perform includes the claimed steps for providing access within the patient's eye during an ocular surgical procedure.

22. Alcon encourages surgeons to provide a plurality of entry alignment devices, each entry alignment device being configured so as to provide an entry aperture in each of the conjunctiva and sclera of the eye.

23. Alcon encourages surgeons to maintain the entry aperture in each of the conjunctiva and sclera aligned during the surgical procedure.

24. Alcon encourages surgeons to insert each of the plurality of entry alignment device into the eye so as to form a plurality of the entry apertures in the conjunctiva and sclera.

25. Alcon encourages surgeons to insert each of the plurality of entry alignment devices into the eye without dissecting the conjunctiva.

26. Alcon has contributorily infringed one or more claims of the '848 Patent in violation of 35 U.S.C. §271(c).  On information and belief, Alcon knew of the '848 Patent at the time it began infringing the '848 Patent.  On information and belief, Alcon knew the Accused

6

Products constituted a material part of the '848 Patent invention. On information and belief, Alcon knew the Accused Products were especially made or especially adapted for use in a method that infringes the claims of the '848 Patent. On information and belief, Alcon knew the Accused Products were not a staple article or commodity of commerce suitable for substantial non-infringing use. The Accused Products have no substantial use that does not infringe the claims of the '848 Patent. On information and belief, Alcon knew that surgeons were performing the Accused Technique using the Accused Products. Surgeons have used the Accused Products in a manner that infringes one or more claims of the '848 Patent.

27. Alcon has infringed and continues to infringe the claims of the '848 Patent with knowledge of JHU's rights in the '848 Patent. Alcon's acts of infringement of the '848 Patent have been and continue to be willful and deliberate. On information and belief, Alcon acted despite an objectively high likelihood that its actions constituted infringement of a valid patent claim and knew or should have known of this objectively-defined risk of infringement.

28. Alcon's infringement has injured JHU and JHU is entitled to recover damages adequate to compensate for such infringement in an amount no less than a reasonable royalty for Alcon's use of the invention claimed by the '848 Patent.

29. Alcon's infringement of the '848 Patent has irreparably injured JHU and will continue to injure JHU unless and until the Court enters an injunction prohibiting Alcon and those acting on its behalf from committing further acts of infringement by enjoining the further use, offer for sale, sale, and importation into the United States of the Accused Products for performing the Accused Technique.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JHU, Inc. prays for the following relief against Alcon:

1. For judgment in favor of JHU that Alcon has infringed and is infringing the '848 Patent;

2. For a permanent injunction prohibiting Alcon, including its officers, agents, employees, and all persons acting in concert or participation with them who receive actual notice of the Court's Order, from committing further acts of infringement of the '848 Patent;

3. For an award of damages for Alcon's infringement of the '848 Patent in the amount of at least a reasonable royalty, together with interest (both pre-and post-judgment), costs and disbursements as fixed by this Court under 35 U.S.C. § 284;

4. For a determination that Alcon's infringement of the '848 Patent has been and is willful;

5. For an award of enhanced damages under 35 U.S.C. § 284;

6. For a determination that this is an exceptional case within the meaning of 35 U.S.C. § 285;

7. For an award to JHU of its reasonable attorneys' fees;

8. For an accounting for damages; and

9. For such other and further relief in law or in equity to which JHU may be justly entitled.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), JHU demands trial by jury on all issues so triable.

Dated:  June 23, 2015                    FISH & RICHARDSON P.C.

By: */s/ Douglas E. McCann*
Douglas E. McCann (# 3852)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P. O. Box 1114
Wilmington, DE 19899-1114
Email:  dmccan@fr.com
Telephone:  (302) 652-5070
Facsimile:  (302) 652-0607

Frank E. Scherkenbach
Kenton W. Freeman
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210
Email: scherkenbach@fr.com
Telephone:  (617) 542-5070
Facsimile:  (617) 542-8906

Todd G. Miller
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Email:  miller@fr.com
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

*Attorneys for Plaintiff The Johns Hopkins University*