IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE JOHNS HOPKINS UNIVERSITY,

Plaintiff,

v.

ALCON LABORATORIES, INC. and
ALCON RESEARCH, LTD.,

Defendants.

C. A. No. 1:15-cv-0525-LS-SRF



**REDACTED VERSION**

## THE JOHNS HOPKINS UNIVERSITY'S
## MEMORANDUM IN SUPPORT OF ITS MOTIONS *IN LIMINE* (NOS. 1-8)

Dated: May 15, 2018

**FISH & RICHARDSON P.C.**

Frank E. Scherkenbach
Kenton W. Freeman, Jr.
One Marina Park Drive
Boston, MA  02210
scherkenbach@fr.com;
kfreeman@fr.com

Todd G. Miller
John W. Thornburgh
12390 El Camino Real
San Diego, CA 92130
miller@fr.com

Corrin N. Drakulich
Christina Brown-Marshall
1180 Peachtree Street NE
Atlanta, GA 30309
drakulich@fr.com;
Brown-marshall@fr.com

Douglas E. McCann (#3852)
Martina Tyreus Hufnal (#4771)
Kelly Allenspach Del Dotto (#5969)
222 Delaware Avenue, 17th Floor
P. O. Box 1114
Wilmington, DE 19899-1114
dmcann@fr.com; hufnal@fr.com;
kad@fr.com
Telephone:  (302) 652-5070

**ATTORNEYS FOR PLAINTIFF
THE JOHNS HOPKINS
UNIVERSITY**

# TABLE OF CONTENTS

**Page**

JHU MIL # 1:  Defendants Should Be Precluded From Injecting An Element of "Harm" Into Either Direct Infringement or Reasonable Royalty Damages ...................... 1

JHU MIL #2:  Defendants Should Be Precluded From Introducing Evidence or Arguments about the Morality or Ethics of Patenting Surgical Methods and of Patenting Government-Funded Research ........................................................................... 5

    A.    The Court Should Exclude Evidence on the Ethics of Patenting Surgical Methods ......................................................................... 5

    B.    The Court Should Exclude Evidence on the Morality of Patenting Government-Funded Research ................................. 7

JHU MIL #3:  Defendants' Retained Expert, Dr. Donald D'Amico, Should Be Precluded From Testifying about the Prior Art Beyond the Disclosure of Paragraph 98 of His Report .......................................................................................... 9

JHU MIL #4:  Defendants Should Be Precluded From Presenting Evidence or Argument that JHU's Election to Pursue Method Claims During Prosecution Prevents JHU From Recovering a Reasonable Royalty. ................................................... 13

JHU MIL #5:  Defendants Should Be Precluded From Making Any Arguments About the Importance of Alleged Substantial Non-Infringing Uses. .............................. 17

JHU MIL # 6:  Defendants Should Be Precluded from Presenting the Quantitative Data in the PAT Surveys to the Jury ................................................................................. 20

JHU MIL #7:  Defendants Should Be Precluded from Presenting Any Documents or Testimony About Dr. Ryan's "Retrospective Study" Produced After September 1, 2017 ...................................................................................................... 24

JHU MIL #8:  Defendants Should Be Precluded From Introducing Their Own Patents Into Evidence As Well As Undisclosed Expert Opinion Testimony That Defendants' Accused Products Practice Their Patents. ................................................... 28

    C.    Procedural Background ............................................................................. 28

    D.    Alcon Should Not Be Permitted to Publish or Introduce Its Patents Into Evidence ......................................................................... 29

    E.    Alcon Should Not Be Permitted to Introduce Testimony Linking Its Patents to the Accused Products ............................................. 30

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*,
    No. 15-cv-915, 2017 U.S. Dist. LEXIS 202842 (D. Del. Dec. 11, 2017) ........................26, 27

*Aqua Shield v. Inter Pool Cover Team*,
    774 F.3d 766 (Fed. Cir. 2014)...................................................................................................4

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)................................................................................................4

*Cameco Industries, Inc. v. Louisiana Cane Manufacturing*,
    No. 92-3158, 1995 WL 468234 (E.D. La. July 27, 1995) ......................................................30

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).......................................................................................................*passim*

*Fonar Corp. v. General Elec. Co.*,
    107 F.3d 1543 (Fed. Cir. 1997)..............................................................................................16

*Glaros v. H.H. Robertson Co.*,
    797 F.2d. 1564 (Fed. Cir. 1986).............................................................................................30

*i4i P'Ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)............................................................................................2, 15

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977)...................................................................................................27

*Oxbo Int'l Corp. v. H&S Mfg. Co.*,
    No. 15-cv-292-jdp, 2017 U.S. Dist. LEXIS 87649 (W.D. Wis. June 7, 2017)......................30

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
    778 F.3d 1365, 1377 (Fed. Cir. 2015) .....................................................................................4

**Statutes**

35 U.S.C. 287(c) ..........................................................................................................................7

35 U.S.C. 287(c)(2)(A), (E), (F) ..................................................................................................7

35 U.S.C. § 271(a) ........................................................................................................................3

35 U.S.C. § 271(c) ......................................................................................................................17

35 U.S.C. §§ 271(e)(1)..................................................................................................2

35 U.S.C. § 284........................................................................................................2, 3

35 U.S.C. §287(a)(c)..............................................................................................2, 31

Bayh-Dole Act..............................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 26............................................................................................26, 27, 31

Fed. R. Civ. P. 26(a)(2)..............................................................................................11, 31

Fed. R. Civ. P. 33(d)....................................................................................................28

Fed. R. Civ. P. 37(c)..............................................................................................26, 27

Fed.R.Crim.P. 16..........................................................................................................31

Fed. R. Evid. 402...................................................................................................... *passim*

Fed. R. Evid. 403...................................................................................................... *passim*

Fed. R. Evid. 701..........................................................................................................31

Fed. R. Evid. 702......................................................................................................11, 31

Fed. R. Evid. 801..........................................................................................................31

Fed. R. Evid. 802............................................................................................................5

**JHU MIL # 1: Defendants Should Be Precluded From Injecting An Element of "Harm" Into Either Direct Infringement or Reasonable Royalty Damages**

Plaintiff The Johns Hopkins University ("JHU") respectfully requests that the Court enter an order *in limine* precluding Defendants Alcon Laboratories, Inc. and Alcon Research, Ltd. ("Alcon") from arguing or presenting evidence to suggest that "harm" is an element of either direct infringement or reasonable royalty damages. "Harm" is not an element of proof for either, and evidence or argument directed to an absence of such "proof" is irrelevant and should be excluded under FRE 402. Such evidence and arguments should also be excluded under FRE 403, because it is unduly prejudicial, misleading, will confuse the jury and waste limited trial time. The non-existent probative value of such "evidence" is substantially outweighed by these risks.

Alcon's retained experts freely admit that they are direct infringers of the asserted claims of the '848 patent. Refusing to concede the issue, however, Alcon advanced a litany of baseless defenses to avoid liability. These are best summarized in the Pretrial Order, which was filed before the Recommendation on Summary Judgment and *Daubert* motions (D.I. 294) issued and was approved and adopted by this court (D.I. 339). In addressing the outstanding disputes of fact and law, Alcon repeatedly lists the following as requiring the jury's attention:

> [W]hether JHU has suffered any harm actionable by damages as a consequence of the alleged infringement by surgeons and/or Alcon, and whether such alleged affirmative actions by Alcon has caused JHU any harm that is actionable by damages; is immune from suit because such activity was engaged in pursuant to research and development efforts, and thus falls within the scope of the "safe harbor" provisions of 35 U.S.C. § 271(e)(1), *see, e.g.*, *Lilly*, 496 U.S. 661 (affirming Federal Circuit that the safe harbor applies when seeking pre-marketing approval for a medical device); and/or whether such uses may support JHU's damages claim against Alcon in view of 35 U.S.C. § 287(c).

(*See e.g.*, D.I. 288, Ex. 3 at 3.) Alcon has also advanced the baseless argument, addressed in JHU's Motion *in Limine* No. 4, that it cannot be liable for infringement or damages because the asserted claims are directed to a surgical method rather than instruments. Of course, Alcon's liability stems

1

from its indirect infringement as it contributes to and induces infringement of the claimed method by surgeons who use the Accused Products.  Those products have no substantial use other than performing the method.

The Recommendation correctly recommended granting summary judgment to JHU as to Alcon's supposed defenses under 35 U.S.C. §§ 271(e)(1) and 287(c).  The Recommendation also correctly explained, "JHU's reasonable royalty calculation based on Alcon's product sales, instead of harm from doctors practicing the patented method, finds adequate support in the record.... Establishing a reasonable royalty does not require proof of harm to the patentee because the inquiry focuses on the benefit to the infringer 'for the use made of the invention by the infringer.' 35 U.S.C. § 284." (D.I. 294 at 28.)  The Recommendation, however, did not expressly deny Alcon's motion for summary judgment of direct infringement harm as framed.[1]  (*See* D.I. 197 at 16, D.I. 294.)  Thus, JHU is concerned that Alcon may pursue this direct infringement harm theory and argue to the jury that damages be reduced or not awarded in the absence of such harm.  Alcon did nothing to assuage these concerns during the meet and confer process.  These arguments should not be permitted.

Direct infringement of the asserted claims is an element of indirect infringement.  *i4i P'Ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010).  To prove either of the two types of indirect infringement—contributory infringement and induced infringement—JHU must prove there has been at least one instance of direct infringement of an asserted '848 patent claim.  Proof on this point is straightforward, as Alcon's own surgeon experts admit they directly infringe the asserted claims using Alcon's accused products.  (*See* Ex. 1, Chang Dep. Tr. at 41:21-44:6; D.I.

---

[1] Instead, the Recommendation characterized Alcon's motion as seeking summary judgment of no direct infringement by medical practitioners and denied it. (D.I. 294 at 27-29).

213-2 at Ex. 25, D'Amico Dep. Tr. at 232:25-237:9.)

Reasonable royalty damages are by statute the smallest measure of damages for patent infringement.  If infringement is proven, these damages must be awarded:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, ***but in no event less than a reasonable royalty for the use made of the invention by the infringer***, together with interest and costs as fixed by the court . . .

35 U.S.C. § 284. The concept of "harm" has no basis in the law of either direct infringement or reasonable royalty damages.  Alcon cites no authority for its minted theory.  (D.I. 210 at 2-5; D.I. 294 at 25.)  If Alcon's concept were the law, then surgical method patents would be unenforceable and entities like Alcon could infringe them with impunity.  In fact, Alcon argues just that—it owes no damages because JHU has not been "harmed" by the actions of surgeons.[2] For example, Alcon argued JHU cannot establish direct infringement because JHU has not shown "that doctors performing procedures have caused any actionable direct infringement harm to JHU." (D.I. 197 at 16, see also 17-18.)  At deposition, Alcon demonstrated the scenario JHU expects at trial by asking Ms. Christy Wyskiel, the Senior Advisor to the President of JHU, how JHU was harmed by surgeons performing the claimed method.  (Ex. 3, Wyskiel Dep. Tr. at 126:7–129:14.)

Notwithstanding Alcon's above described arguments, 35 U.S.C. § 271(a), the direct infringement statute says nothing about harm:

---

[2] To be clear, Alcon's willful infringement has harmed JHU.  Alcon's unlicensed use of JHU's technology has cost JHU significant lost revenue from its licensee, Bausch & Lomb.  Moreover, as a research institution, JHU's mission is "[t]o educate its students and cultivate their capacity for lifelong learning, ***to foster independent and original research, and to bring the benefits of discovery to the world***." ([https://www.jhu.edu/about/history/](https://www.jhu.edu/about/history/) (emphasis added).)  "A renewed commitment to the pipeline of discovery from basic research to licensed discoveries will play a central role in how we advance our mission and rise to meet the challenges and possibilities of this new world."  (Ex. 2, Johns Hopkins Technology Ventures presentation, at 11.)  To further its mission, JHU depends on licensing revenue and corporate sponsorship, both of which are significantly impaired by Alcon's infringement.  (Ex. 3, Wyskiel Dep. Tr. at 126:7-129:14.)

Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Harm is also not an element of damages measured by a reasonable royalty.  As found by the Recommendation, reasonable royalty damages are calculated based on the *value of what was taken* by the infringer, not the *damage suffered* by the patentee.  *Warsaw Orthopedic, Inc. v. NuVasive*, Inc., 778 F.3d 1365, 1377 (Fed. Cir. 2015); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) ("The 'value of what was taken'—the value of the use of the patented technology—measures the royalty."); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015) (The reasonable royalty is intended "to compensate . . . for its lost opportunity to obtain a reasonable royalty" that the infringer would pay to use the invention.).  "In accordance with this authority, both parties' experts adopted a damages model based on Alcon's product sales, as opposed to the harm suffered by JHU." (D.I. 294 at 28; *see also* 28-29.)

That reasonable royalty damages are appropriate and awarded for indirect infringement of surgical method patents is beyond question. Alcon's efforts to make these "harm" arguments and place any supporting evidence before the jury should be excluded as irrelevant under FRE 402. Harm has no bearing on infringement or reasonable royalty damages or on the other issues to be decided by the jury.  Evidence and arguments about "harm" should further be excluded under FRE 403.   The non-existent probative value of any discussion of harm would be substantially outweighed by the risk of confusing and misleading the jury about the issues they are actually being asked to decide.  If the jury were to hear these harm arguments, JHU would be forced to waste a substantial amount of time rebutting the legally irrelevant arguments and explaining to the jury that Alcon's harm theory is not the law and that they are being misled.

4

**JHU MIL #2:  Defendants Should Be Precluded From Introducing Evidence or Arguments about the Morality or Ethics of Patenting Surgical Methods and of Patenting Government-Funded Research**

Plaintiff The Johns Hopkins University ("JHU") respectfully requests that the Court enter an order *in limine* precluding Defendants Alcon Laboratories, Inc. and Alcon Research, Ltd. (collectively "Alcon") from introducing evidence and argument (1) suggesting it is unethical to patent medical procedures, or (2) suggesting that it is improper or immoral for a non-profit teaching hospital that receives some government research funding to seek patent protection on its inventions.  Such evidence and argument is irrelevant, hearsay, and its (nonexistent) probative value is substantially outweighed by Rule 403 concerns.

### A.    The Court Should Exclude Evidence on the Ethics of Patenting Surgical Methods

Christy Wyskiel, Senior Advisor to the President of Johns Hopkins, was deposed by Alcon in October 2017.  At the deposition, Alcon introduced Exhibit 179—a copy of the proceedings of the 1995 American Medical Association ("AMA") annual meeting.  The proceedings include a report of the group's Council on Ethical and Judicial Affairs, which contains a statement that "the Council believes that it is unethical for physicians to seek, secure or enforce patents on medical procedures."  (*See* Ex. 4, Wyskiel Dep. Ex. 179 ("AMA Report"), at 206.)[3]  Alcon asked Ms. Wyskiel, among other things, if she was aware of the statement (she was not) and if she "expect[ed] to go discuss this amongst [her] colleagues at Johns Hopkins" (she did not, correctly identifying, even as a layperson, that it is irrelevant). (Ex. 3, Wyskiel Dep. at 132:22-133:17; 136:1-20.)[4]

_____

[3] The AMA report (which would be offered for the "truth" that patenting a medical procedure is potentially unethical in the view of certain AMA members) is hearsay and there is no custodian through whom an exception can be established -- certainly not Ms. Wyskiel, who never heard of the report or the Council prior to her deposition.  (Ex. 3, Wyskiel Dep. at 133:6-17.)  The AMA report (Ex. 4) should thus also be excluded under FRE 802.

[4] Alcon asked similar questions at other depositions.  JHU focuses on the Wyskiel deposition in this motion as representative of the type of evidence and argument that should be excluded.

A viewpoint on the ethics of surgical method patents expressed by an AMA subcommittee and which is contrary to United States patent law expressly allowing such claims is irrelevant to the issues that will be tried to the jury.  While Alcon raised in its Answer (D.I. 17) seventeen different defenses to liability for infringing those claims, nowhere in the Answer, or in any response to written discovery, does Alcon claim that Johns Hopkins' prosecution or enforcement of the '848 patent is somehow immoral or contrary to medical ethics.  The absence of such a charge is not surprising; a particular viewpoint on medical ethics may have its place in the discussions of professional associations, but it is irrelevant to the substantive issues of infringement, willfulness, damages and validity that the jury will be asked to decide.  The Federal Circuit has repeatedly upheld jury verdicts against companies, like Alcon, that indirectly infringe surgical method claims.  In addition, the statement does not tend to show bias or a lack of credibility of a particular witness (and certainly not Ms. Wyskiel, who had never heard of it), and so is not impeachment.  It should be excluded as irrelevant under FRE 402.

Evidence or argument about the ethics of surgical method patents should also be excluded under FRE 403.  It has no probative value to weigh in balance against the dangers identified in FRE 403, most of which are implicated.  Unfair prejudice is manifest—the jurors in all likelihood will have no training or experience in the intersection of medical ethics and patents, and may accept Alcon's claim that the AMA has decreed JHU's patent "unethical."  Such evidence and argument would also be misleading and confusing, because it has nothing to do with the issues the jurors will be asked to decide or the instructions the jury will be asked to follow in rendering their verdict.

Introduction of this evidence or argument is also a waste of the jurors' time.  JHU would be forced to respond to this inflammatory allegation to show that the AMA opinion contrary to the law, outdated, and inapplicable to the facts here—not least, because it pertains to "physicians"

6

asserting patent rights to surgical method patents against other physicians, not to research institutions like JHU asserting patent rights against indirect infringers, like Alcon.  For example, "the most compelling reason" advanced by the authors of the AMA Report for declaring medical procedure patents unethical is that patients could not have necessary medical procedures without their doctors first taking a license to the patented method. (Ex. 4 at 202.)  JHU would have to show that is wrong and untrue: Congress has precluded suits against physicians and hospitals for their infringement of method patents during the performance of medical procedures. 35 U.S.C. 287(c).  JHU would also have to show the authors are wrong that academic research is restricted (Ex. 4 at 203); Congress immunized the practice of patented methods on cadavers and animals used in medical research or instruction.  35 U.S.C. 287(c)(2)(A), (E), (F).  The authors also worry about increased financial burden from patent licenses (Ex. 4 at 204); JHU would have to introduce testimony that licenses on surgical methods, instruments and medicines sold by companies (including Alcon) are both common and ethical and help incentivize the innovations that allow medical technology to advance.  Finally, the concerns about patent privacy violations because of patent holders attempting to monitor physician activity is not well taken. (*Id*.)  Since physicians and hospitals cannot be liable for infringement of a patented surgical method, there is no reason for patent holders to invade patient confidentiality (nor is there evidence that this happens or happened in this case).  Because such a trial-in-a-trial would be a waste of time that substantially outweighs any (nonexistent) probative value, evidence and argument about the ethics of patenting medical procedures should be excluded under FRE 403.

**B.     The Court Should Exclude Evidence on the Morality of Patenting Government-Funded Research**

At Ms. Wyskiel's deposition, Alcon established that some of JHU's research is government funded, and that JHU patents some inventions developed through its research.  (Ex. 3 at 14:6-23.)

7

Counsel then asked "[w]ouldn't it be better for society if you just allowed anyone to practice the results of JHU's research instead of seeking a patent to exclude others from practicing it?" (*Id*. at 14:24-15:2.)  While that may be an interesting topic for a philosophical or political discussion, it has nothing to do with the issues the jury will be asked to decide.  Any such evidence and argument should be excluded as irrelevant under FRE 402.  As with the issue on ethics discussed above, this line of inquiry should also be excluded under FRE 403.  The risk of unfair prejudice, confusion, and misleading jurors is substantial: jurors may think that JHU has done something wrong— although there is nothing wrong with patenting research funded by the government.[5]  Countering that concern would lead to another trial within a trial and a resulting waste of time.  JHU would have to show that the regulations under the Bayh-Dole Act allow institutions like JHU to retain ownership of their inventions, and reflect a government policy encouraging institutions like JHU to patent and commercialize their inventions to help support even more research.  *See* Intellectual Property Policy, National Institutes of Health, available at https://grants.nih.gov/policy/intell-property.htm (visited Dec. 16, 2017).  There is no authority for the proposition that, because the government provides funding to JHU, Alcon is immunized from liability for its willful infringement of JHU's patent.  Because the dangers of unfair prejudice, confusion, misleading the jurors and wasting time substantially outweigh the nonexistent probative value, any evidence or argument about the morality of enforcing inventions owned by a University that receives government funding should be excluded under FRE 403.

---

[5] To be clear, there is nothing in the record showing the extent, if any, to which government funding played a role in the development of the surgical methods claimed in the '848 patent.

8

**JHU MIL #3:  Defendants' Retained Expert, Dr. Donald D'Amico, Should Be Precluded From Testifying about the Prior Art Beyond the Disclosure of Paragraph 98 of His Report.**

Plaintiff The Johns Hopkins University ("JHU") respectfully requests that the Court enter an order *in limine* precluding Defendants Alcon Laboratories, Inc. and Alcon Research, Ltd. (collectively "Alcon") from eliciting testimony from its retained infringement expert, Dr. Donald D'Amico, regarding the prior art beyond the discussion he provides in paragraph 98 of his report. Dr. D'Amico is a vitreoretinal surgeon.  He was retained by Alcon to offer opinions related to infringement and aspects of damages—including (as relevant to this motion) opinions about the smallest saleable patent practicing unit ("SSPPU").  Alcon retained another expert, Dr. Stanley Chang, to offer opinions on issues of invalidity.

In his report, Dr. D'Amico offered that he "understand[s] that Alcon has taken the position that the surgical methods disclosed in the '848 patent were disclosed in the prior art," and (2) that he "agree[s] with this position." (D.I. 220, Ex. 24 at ¶106.)  At his deposition, Dr. D'Amico conceded that he did not know the relevant law of validity and that he was only offering "a doctor's opinion" about invalidity.  (D.I. 220, Ex. 25 at 20-25.)  JHU recognized Dr. D'Amico's opinion for what it was—an improper "hedge" to give Alcon a second bite at the validity apple in case Alcon's validity expert (Dr. Stanley Chang) faltered.

JHU moved under *Daubert* to exclude Dr. D'Amico's invalidity opinions as unreliable.  In opposition, Alcon conceded (as it had to) that Dr. D'Amico could not offer invalidity opinions. (D.I. 235 at 19.)  But Alcon hedged about what that meant.  Specifically, Alcon said:

> Alcon does not intend to rely upon Dr. D'Amico to opine on the ultimate conclusion of invalidity, but he will offer testimony based on his personal knowledge, consistent with the analysis his expert report provides.  For example, Dr. D'Amico may, consistent with his expert report, provide background information on the history of vitreoretinal surgery; he has personal knowledge as a result of his 30+ year career and his status as a leader in the field.  ***This may include analyzing prior art references***.  Also, for example, he may testify about how the smallest saleable

patent practicing unit is limited to cannulas because, otherwise, the claims **encompass prior art instruments**.

*Id.* (emphasis added).

The Recommendation saw through this ploy.  Based on an absence of analytical support or consideration of the applicable legal standards, Magistrate Judge Fallon correctly recommended excluding entirely "the invalidity testimony of Alcon's infringement expert, Dr. Donald J. D'Amico."  (D.I. 294 at 23, adopted at D.I. 339.)  Alcon did not object to this recommendation. This Recommendation, however, did "not extend to Dr. D'Amico's opinion on the smallest salable unit **for purposes of the infringement analysis**" because that aspect of his opinion was not challenged under *Daubert*.  (*Id.* (emphasis added).)  JHU's present motion, therefore, is directed to ensuring that Dr. D'Amico's analysis of the prior art relating to the SSPPU is both consistent with the Recommendation and does not stray beyond the discussion found in paragraph 98 of his report, which is a subset of Dr. D'Amico's infringement analysis and has nothing to do with validity.  The following is the extent of Dr. D'Amico's discussion of the prior art in the context of his SSPPU analysis:

> This claim covers a method for providing access within an eye using an entry alignment device without pulling back the conjunctiva. This fairly describes the invention as described in the specification, prosecution history, and as distinguished from the prior art methods. Entry alignment devices (e.g., cannulas) were known to provide access within an eye (*see, e.g.*, Machemer 1985), and procedures that did not require pulling back the conjunctiva were known (*see, e.g.*, '363 patent). However, I am not aware of an explicit description of providing access within an eye using an entry alignment device without pulling back the conjunctiva. Therefore, Claim 38 appears to address the differences between the explicit disclosures in the prior art and the claimed method.

(D.I. 220, Ex. 24 at ¶98.)

Given this scant disclosure and that Dr. D'Amico is testifying about infringement only, there is no legitimate reason for Dr. D'Amico to talk about "the history of vitreoretinal surgery"

(including, as Alcon contended in its failed *Daubert* opposition, "analyzing prior art references")—particularly if, as JHU expects, the testimony is framed in terms of what was known and conventional in the prior art and goes beyond what Dr. D'Amico addressed in paragraph 98 of his report. The analysis of the prior art is the province of Alcon's invalidity expert, Dr. Chang, and the jury should not hear redundant and undisclosed opinions concerning prior art from Dr. D'Amico.[6] Such testimony would go beyond the scope of Dr. D'Amico's expert report in violation of Fed. R. Civ. P. 26(a)(2), be unhelpful to the trier of fact under FRE 702 because the testimony would be divorced from the relevant law of invalidity, irrelevant under FRE 402 for the same reason, and excludable under FRE 403 because any probative value would be substantially outweighed by the danger of unfair prejudice to JHU (who would have to cross examine on undisclosed opinions) and the great risk that such testimony would confuse and mislead the jury.

For similar reasons, the Court should (again) reject Alcon's suggestion that Dr. D'Amico would support his opinion relating to smallest saleable patent-practicing unit with arguments that a narrowed portion of the accused products must be the correct SSPPU because anything broader would "encompass prior art instruments"—in other words, the patent claims would be invalid if construed to cover other products. Dr. D'Amico should not be permitted to offer such testimony because even he acknowledges that he is unqualified to offer opinions on validity.

---

[6] JHU successfully moved for summary judgment to limit Dr. Chang's obviousness opinion to the combinations of the four references on which he based his obviousness opinion. Dr. Chang was subsequently permitted to address other references as background to his obviousness opinion or to rebut secondary considerations. However, it would make no sense to permit Dr. D'Amico, the infringement expert, to provide undisclosed opinions about an undisclosed universe of prior art about which Alcon's own validity expert Dr. Chang is not permitted to base his obviousness opinion.

Accordingly, JHU respectfully requests an order *in limine* limiting Dr. D'Amico's testimony regarding the prior art to the discussion of the two references found in paragraph 98 of his report.

**JHU MIL #4:  Defendants Should Be Precluded From Presenting Evidence or Argument that JHU's Election to Pursue Method Claims During Prosecution Prevents JHU From Recovering a Reasonable Royalty.**

Plaintiff The Johns Hopkins University ("JHU") respectfully requests the Court enter an order *in limine* precluding Defendants Alcon Laboratories, Inc. and Alcon Research, Ltd. ("Alcon") from questioning witnesses, presenting evidence, or arguing that, because JHU's patent claims are directed to methods of use, JHU cannot recover a reasonable royalty for Alcon's indirect infringement.  In particular, Alcon has argued that because JHU obtained method claims but abandoned a divisional application that claimed surgical tool kits, JHU should be barred from recovering a reasonable royalty based on Alcon's sales of products used to perform the claimed method.  (*See* D.I. 197 at 1 ("JHU tried to secure a patent on instruments that can be used to perform the patented method, but was unable to do so. Now it is improperly trying to convert its method patent into a *de facto* product patent.").)  There is only one patent at issue in this case. Evidence and argument about an abandoned patent application is irrelevant and its (nonexistent) probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury and wasting time.

Magistrate Judge Fallon already rejected Alcon's argument in substance (D.I. 294 at 28 ("It is well-established that medical device and drug manufacturers may be liable for inducing or contributing to a medical practitioner's direct infringement of a patented method").)  This Court should similarly preclude Alcon from contending that it cannot infringe method claims because that argument is legally wrong and will mislead the jury.  Alcon is an indirect infringer; its liability is based on inducing and contributing to infringement by surgeons who perform the patented method using the accused products.  Those products have no substantial use other than in performing the method. That JHU elected not to continue prosecution of a divisional application

after the '848 patent issued is irrelevant to Alcon's liability for infringement of the asserted '848 patent.

The application that led to the '848 patent originally included claims to methods for "treating a posterior segment of an eye" (asserted claim 25) and for "providing access within an eye during an ocular surgical procedure" (asserted claim 38), as well as claims directed to using entry alignment devices, high speed vitreous cutter, forceps, scissor, pick, light source, laser fragmentation, diathermy and aspirator instruments in performing the claimed method. The claims that issued still include these features. The claimed instruments are among the accused products sold by Alcon that are used by the directly infringing surgeons to perform the claimed method.

During prosecution, the examiner asked JHU to choose whether it would pursue its presented method claims or its presented apparatus claims. JHU elected to first pursue its pending method claims. Those claims issued in July 2006 as the '848 patent. JHU filed a separate divisional application Ser. No 10/683,658 (the "Divisional Application") to pursue the apparatus claims. However, having secured broad method claims which would necessarily be indirectly infringed by companies, like Alcon, that sold instruments and kits of instruments used to perform the method, JHU discontinued prosecution of the Divisional Application.

Alcon has argued repeatedly that JHU's discontinued prosecution of the Divisional Application means the '848 patent does not cover the accused products. For example, in their motion for summary judgment, Defendants devoted the first two sections of the "Factual Background" section to the Divisional Application. (D.I. 197 at 4–5.) Throughout its arguments, Alcon glosses over the critical fact that JHU secured allowance of the claims of the '848 patent, which are indirectly infringed by companies selling products they know are used by surgeons to perform the claimed method—their intended, promoted and only practical use. In response to

Alcon's argument, the Recommendation correctly found "the sale of an apparatus capable of performing a claimed method may constitute infringement of the method if the record adequately establishes the elements of causes of action for direct and indirect infringement." (D.I. 294 at 37.) However, because the Recommendation does not specifically preclude Alcon from repeating its flawed argument about the Divisional Application at trial in some other guise, JHU brings this motion *in limine*.

Alcon tries to support its legally flawed argument with equally flawed evidence. Alcon's two key technical experts opined on the Divisional Application. (*See* D.I. 224 at Ex. 24, June 6, 2017 D'Amico Rpt. ¶¶ 62–67 ("I understand that the Applicants attempted but failed to get patent claims for a number of surgical devices."); D.I. 238 at Ex. 18, May 2, 2017 Chang Rpt. ¶¶ 59–72 (entire section titled "The Related Patent Application").) Of course, neither of these surgeons is an expert in substantive patent law, patent damages, or patent prosecution. Instead, Alcon is using them to deliver legally baseless attorney argument about the Divisional Application. Alcon also sought to give the fact witnesses a role in its flawed arguments by asking JHU witnesses at deposition whether they believe the '848 patent covers "devices." (*See, e.g.*, Ex. 5, Roberts Dep. Tr. at 16:3–16; Ex. 3, Wyskiel Dep. Tr. at 32:22–39:6.)

Arguments about the Divisional Application should be excluded under FRE 402. As the Recommendation correctly found, it is typical and permissible to calculate a reasonable royalty for infringement of method claims by using the price of products used to perform the method. (*See e.g.*, D.I. 294 at 28 (citing *Warsaw Orthopedic, Inc. v. Nuvasive, Inc.* (affirming a finding of induced infringement of method claims for the sale of a medical device by the defendant device manufacturer where surgeons directly infringed the method claims)).) *See also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849–54 (Fed. Cir. 2010) (affirming a $200 million reasonable

royalty, where the defendant's customers practiced the claimed method, the defendant indirectly infringed, and the royalty was calculated based on the defendant's product sales); *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1552–53, 1556 (Fed. Cir. 1997) (affirming royalty on medical devices, MRI machines, where patent covered a method of using them).   Even Alcon's own damages expert calculated damages as a percentage of Alcon's product sales. (*See, e.g.*, D.I. 198 Ex. E1, June 6, 2017 Davis Rpt. at 12–13 ("Based on my understanding of the facts and circumstances surrounding this matter, assuming liability, it is my opinion that damages would consist of a running royalty of no more than ■ applied to all sales of Alcon's accused products.").)

Alcon's argument about the Divisional Application should also be excluded under FRE 403.  Such arguments, if permitted, would mislead and confuse the jury.  The patent law allows inventors many ways to claim an invention, including through claims directed toward a surgical method.  In the medical device field, such claims are particularly valuable and necessary because they protect the broad invention and can thereby encompass a range of instruments.  If a company like Alcon induces or contributes to infringement of those method claims by selling instruments used, it is liable and can be made to pay reasonable royalty damages for the devices it sells to surgeons who use those devices to perform the method.  As the Recommendation found, "genuine issues of material fact exist regarding whether doctors performing the patented method using Alcon's surgical instruments directly infringe the '848 patent."  (D.I. 294 at 27.)

Alcon's arguments based on the abandoned Divisional Application should be excluded under FRE 402 and FRE 403 because they are irrelevant, prejudicial and are likely to mislead the jury to believe that Alcon may infringe JHU's asserted '848 patent with impunity.

16

**JHU MIL #5:  Defendants Should Be Precluded From Making Any Arguments About the Importance of Alleged Substantial Non-Infringing Uses.**

Plaintiff The Johns Hopkins University ("JHU") respectfully requests that the Court enter an order *in limine* precluding Defendants Alcon Laboratories, Inc. and Alcon Research, Ltd. ("Alcon") from making arguments or eliciting testimony about the "importance" of alleged non-infringing uses of the accused products.  Such evidence and argument is irrelevant and should be excluded under FRE 402.  Further, such evidence and arguments should be excluded under FRE 403 as contrary to law, lacking probative value, and both confusing to the jury and unfairly prejudicing JHU.

The '848 patent claims methods for "treating a posterior segment of an eye" (asserted independent claim 25) and for "providing access within an eye during an ocular surgical procedure" (asserted independent claim 38).  The direct infringers are surgeons who perform the claimed surgical methods using the accused products.  Alcon's surgeon experts freely admit to their direct infringement of the asserted claims.  As relevant to this motion, Alcon is liable as an indirect infringer under 35 U.S.C. § 271(c) because it contributes to direct infringement by selling the accused products to physicians who use those products to perform the claimed methods.  As part of its proofs for contributory infringement, JHU must show, by a preponderance of the evidence, that the accused products are not "a staple article or commodity of commerce suitable for *substantial* noninfringing use."  35 U.S.C. § 271(c).

During fact and expert discovery, JHU adduced evidence that the accused products are used nearly exclusively to perform the patented method.  Alcon has attempted to rebut that evidence by showing that the accused products have a non-infringing use—an eye surgery referred to as a "vit-buckle."  Alcon's retained expert opined that, because vit-buckle procedures are "*important*" when used to treat retinal detachment patients, that use is a substantial non-infringing

17

use.  (D.I. 224 at Ex. 20, Aug. 22, 2017 Ryan Rpt. ¶ 71.)  Alcon doubled down on this argument in its motion for summary judgment of no contributory infringement.  (D.I. 197 at 18-25.)  There, Alcon argued that "Vit-Buckles Are a Substantial Non-Infringing Use of Alcon's Accused Products for Every Asserted Claim" because, among other things, "vit-buckle procedures are *important* procedures that vitreoretinal surgeons continue to use as a treatment option for their patients with retinal detachments."  (D.I. 197 at 19-20 (emphasis added).)

Whether the vit-buckle is an "important" procedure is not relevant to whether its use is "substantial".  Nor should it be.  If importance was the test, then nearly all alleged non-infringing surgical methods would be substantial because surgery is typically used to achieve an objective that is important to the patient.  Instead, the statute uses the word "substantial".  Relevant considerations in assessing whether an asserted non-infringing use is substantial include the frequency of the non-infringing use, its practicality, the invention's intended purpose, and the intended market. (D.I. 294 at 31 (citing *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010)).)[7]

The Court should exclude any evidence or argument by Alcon that the vit-buckle is an important non-infringing use as irrelevant under FRE 402.  Such evidence and argument should be excluded under FRE 403 as well.  There is no probative value to such evidence and argument because it does not address the relevant legal standard, but there is a substantial danger that such arguments will confuse and mislead the jury.  For example, the jury could easily confuse the importance of the "vit-buckle" procedure to the few patients who might benefit from it with the

---

[7] Indeed, Magistrate Judge Fallon recommended denial of Alcon's motion for summary judgment of no contributory infringement based on disputed material facts regarding the frequency and practicality of the vit-buckle procedure. (D.I. 294 at 32-33.)  Even though Alcon had made the "importance" argument in its briefing (D.I. 197 at 20), the Court did not discuss or base its decision on that ground.

legal requirement that the alleged non-infringing use be substantial, *i.e.*, more than "occasional" use.  The prejudice of leading the jury to an incorrect understanding of the law is manifest and would require JHU to expend limited trial time explaining to the jury that Alcon is urging it to apply the wrong legal standard in an effort to escape liability for its infringement.

**JHU MIL # 6: Defendants Should Be Precluded from Presenting the Quantitative Data in the PAT Surveys to the Jury.**

Alcon has indicated that it plans to rely on "Preferences and Trends" ("PAT") Surveys to try to show the "vit-buckle" procedure is a substantial non-infringing use of the accused products. Importantly, as Magistrate Judge Fallon noted in her Report and Recommendation, Alcon's sponsoring expert, Dr. Ryan, conceded "that the surveys are not quantifiably representative of U.S. surgeons, and are not professional surveys." (D.I. 294 at 21.) The PAT Survey "responses are retrospective opinion and are not based on accurate review of records by the respondents." (D.I. 294 at 15.)

In addition, the Recommendation correctly observed that the "record reflects that only one out of every three ASRS members participated in the 2015 PAT Survey, which represented a record number of responses. … Although the PAT Surveys present data regarding non-infringing uses, the data does not account for the low response rate and is not weighted for the number of surgeries performed by each respondent."  (*Id*. citing D.I. 220, Ex. 7 at ALCONMIVS1025798, 1025851.)  Thus, all parties—Alcon included—do "not dispute that the PAT Surveys were not designed to provide statistically accurate percentages regarding the number of vit-buckle … procedures performed in a given year." (D.I. 294 at 16.)

Confronted on *Daubert* with the overwhelming evidence of the unreliability of the PAT Survey data, Alcon argued the PAT Surveys should not be excluded in their entirety because they "are ***qualitatively*** useful in confirming that the relevant surgical community evaluates general trends and preferences on an annual basis." (*Id*. at 16 (emphasis added).)  Because all parties agree that the ***quantitative*** data in the PAT Surveys (*e.g*., bar graphs and reported percentages) are not reliable, it should not be presented to the jury.  Dr. Ryan can make his ***qualitative*** point that "the ASRS [] survey[s] the use of these procedures each year" by presenting the PAT Surveys, the

survey questions, the answer choices, and other portions of the PAT Surveys **without** the percentages and bar graphs.  Allowing the unreliable quantitative data to come into evidence would be both misleading and confusing, because the jurors would incorrectly assume the numbers may be considered in their quantitative assessment of the frequency with which vit-buckle procedures are performed across the country.  The resulting prejudice to JHU, and the unnecessary, confusing and time-consuming side show of having to explain to the jury why the percentages and bar graphs shown in the survey slides are unreliable, far outweighs the limited (if any) probative of this admittedly unreliable information.  This problem is solved by the exclusion of all quantitative data in the PAT Surveys under both F.R.E. 402 and 403.

JHU's concern that Alcon and Dr. Ryan will try to use the percentages and bar graphs from the PAT Surveys if they are not redacted by order of the Court is not unfounded.  Dr. Ryan's position on this topic has been ever-shifting.  In his initial expert report, Dr. Ryan overtly relied on the PAT Survey data to support his **quantitative** opinions.  (*See, e.g.*, D.I. 224 at Ex. 18, ¶¶ 33-34 ("[T]he 2010 PAT Survey asked respondents which surgical procedure they would perform on a patient who has RRD located superiorly with tear, lattice degeneration, clear lens, and -10 myope….Approximately 17% responded that they would use a vit-buckle to repair this type of RRD. That approximately 17% of respondents performed vit-buckle procedures to repair this specific presentation of RRD in 2010 is significant and substantial."); *see also id.* ¶¶ 90, 95, 97-99, 102-107, 109-115, 119-123, 127-129, 133-135, 139-143, 147-150.)  When confronted with the responsive report of JHU's survey expert, however, pointing out all the reasons the Survey data was not quantitatively reliable, Dr. Ryan changed his tune.  In his Supplemental Expert Report (D.I. 224 at Ex. 20), Dr. Ryan disavowed the reliability of the numbers in the PAT Surveys:

- "I in no way attempted to draw a quantitative conclusion" from the PAT Surveys. (¶ 56.)

- "[N]o one, including me, believes they should be used to reach precise, statistically significant quantitative conclusions." (¶ 69.)

- "I did not use the PAT Surveys…to reach a quantitative conclusion." (¶ 25.)

- "[M]y assessment and analysis of the PAT Surveys was not one of a statistical or quantitative nature; rather my analysis was qualitative in nature." (¶ 35.)

- "I disagree that I undertook a quantitative analysis of [the PAT Surveys]." (¶ 55.)

At the beginning of his deposition, Dr. Ryan continued to toe the new party line:

Q.      You're not relying on the PAT Surveys for any quantitative information, right?

A.      That's correct.

Q.      Because you agree the PAT surveys aren't based on a reliable source for quantitative information?

A.      Correct, for precisely quantitative information.

(D.I. 224 at Ex. 21, 9/1/2017 Ryan Dep. Tr. 40:2-9 and errata sheet correcting 40:5).

But by the end of the deposition, Dr. Ryan admitted that he will, if permitted, ask the jury to draw the very quantitative conclusions from the PAT Surveys that he disavowed in his supplemental report and at the beginning of his deposition:

Q.      And you're going to ask the jury to come to a quantitative conclusion based on that PAT Survey data, aren't you?

A.      I'm going to have to ask—I would ask the jury to come to a conclusion and they will have to quantitate it.

Q.      And their conclusion will be based in part on the PAT Survey data that you provide to them, right, sir?

A.      It probably would be.

(D.I. 224 at Ex. 21, 9/1/2017 Ryan Dep. Tr. 73:16-25).

Alcon's exploitation of the risk of jury confusion can be easily prevented by precluding Alcon and Dr. Ryan from presenting the **_quantitative_** data in the PAT Surveys—the percentages

and bar graphs. This will not impede Alcon's or Dr. Ryan's ability to make the ***qualitative*** point that the Recommendation has suggested the PAT Surveys may be used for.  (D.I. 294 at 17 ("Regardless of the accuracy of the numerical data set forth in the PAT Surveys, the decision by the ASRS to survey the use of these procedures each year is relevant to the question of whether the non-infringing procedures are unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.").)   Stated differently, the PAT Surveys are relevant to show that surgeons are still asked questions about the vit-buckle procedure, but the surveys are not relevant or reliable indicators of how often those procedures are in fact performed.  Because the limited probative value of the quantitative data is substantially outweighed by the risk of misleading the jury, the quantitative data in the PAT Surveys should be excluded under F.R.E. 403.

**JHU MIL #7: Defendants Should Be Precluded from Presenting Any Documents or Testimony About Dr. Ryan's "Retrospective Study" Produced After September 1, 2017**

Alcon should be precluded from relying on any documents relating to Dr. Ryan's "retrospective study" that were produced after the close of expert discovery and Dr. Ryan's deposition, which both occurred on September 1, 2017. Specifically, the documents produced by Dr. Ryan in January, February and April of 2018 concerning Dr. Ryan's study should be excluded. These documents were produced far too late for JHU to take the necessary discovery to develop its responsive case. Moreover, these late produced documents are selectively incomplete, hampering JHU's ability to cross-examine Dr. Ryan at trial.

Dr. Ryan argues that his "study"[8] shows that vit-buckles are a substantial non-infringing use of the accused products. His study is based on a review of surgical records from a handful of surgical centers in 2015. It appears that Dr. Ryan intends to use his study to demonstrate how frequently vit-buckle procedures are performed and to rebut peer-reviewed studies concluding this procedure offers no improvement in outcome for the vast majority of patients.

JHU first learned of Dr. Ryan's retrospective study from his June 6, 2017 expert report, in which he referenced data he had apparently collected and analyzed for 799 patients and an abstract he had submitted with that preliminary study data. (D.I. 198 at Ex. B1 (Ryan 6/6/2017 Report), ¶ 161.) No data concerning the study accompanied Dr. Ryan's report or was produced by Alcon. JHU promptly subpoenaed Dr. Ryan on June 26 seeking, among other things, "[a]ll Documents Concerning the retrospective study referenced in paragraph 161 of your June 6, 2017 expert report[.]" (Ex. 6, Subpoena at Request No. 1.) Dr. Ryan did not produce anything in response to the subpoena until August 22—a week before both the close of expert discovery and Dr. Ryan's

---

[8] Dr. Ryan is the lead investigator and Dr. Ryan's daughter is the study coordinator.

scheduled deposition. And even then, he only produced *three* documents concerning his study, even though he certainly had more documents in his possession, custody and control.

JHU confirmed the obvious during Dr. Ryan's September 1, 2017 deposition—that Dr. Ryan was withholding documents relating to his study and responsive to JHU's subpoena. (*See, e.g.*, Ex. 7 (9/1/2017 Ryan Dep. Tr.) at 136:23-25 ("Q. Where can I find a copy of the approved proposal? A. That's the copy that we have in my computer."), 134:14-17 153:1-25, 172:18-173:16.) JHU promptly followed up on September 11 to reiterate its document request. (Ex. 8 at 9/11/2017 Email.) JHU specified in that correspondence that the production needed to occur "no later than September 15" so that JHU would have adequate time to conduct follow-up discovery and prepare for trial. (*Id.*)

JHU heard nothing further from Alcon for *four months*. Then, on January 17, 2018, in apparent anticipation of the then-upcoming February trial date, Alcon responded to JHU's requests *not* by producing the documents necessary to give the produced data context and meaning, but instead by producing *new data* relating to thousands of patients not included in the data set on which Dr. Ryan had been deposed[9]. (*See, e.g.*, Ex. 9 (Ryan0000104).)

Since January, Alcon and Dr. Ryan have further exacerbated the prejudice of their discovery misconduct. After JHU objected to the January production as untimely, prejudicial and incomplete (Ex. 8 at 1/24/2018 Email), Dr. Ryan produced still more documents in February and April relating to *new and different findings* from the study. (*See, e.g.*, Ex. 10, 2/23/2018 Email; Ex. 8 at 4/11/2018 Email ("Shortly you will receive … a production of an updated version of the data previously produced in RYAN0000104, labeled as RYAN0000293.").) To this day, JHU has

---

[9] This information was not only untimely, it was also improperly redacted, as evidenced by the spreadsheet title, "All_Data_Scrubbed_1.1.18." (*See*, e.g., Ex. 9.)

received little information about the implementation, controls, or selection and exclusion of participants used in Dr. Ryan's study. This information is necessary to evaluate and cross examine Dr. Ryan about the study, and for JHU's own experts to adequately respond.

Had the requested information been timely produced, JHU could have served subpoenas, for example, on the study centers for the "raw data" so that JHU's experts could test the application of the study's patient inclusion and exclusion criteria. JHU also would have been able to serve subpoenas on the organizations to which Dr. Ryan apparently submitted abstracts of his study, to obtain, for example, the assessment of peer reviewers of the study's design, implementation and conclusions. Because Dr. Ryan and Alcon refused to abide by their discovery obligations, JHU and its experts have been denied the opportunity to fully and fairly vet the Ryan study data. JHU has thus been handicapped in its preparation of a "[v]igorous cross examination" of Dr. Ryan and his study, and JHU's experts have not had a fair opportunity to develop responsive opinions so that they might "present[] contrary information" based on an adequate record.[10] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

Allowing Alcon to rely on Dr. Ryan's untimely and incomplete supplementation would be prejudicial to JHU and violate Rule 26[11]. When a party violates Rule 26, Rule 37(c) mandates that

---

[10] Alcon has offered Dr. Ryan for a supplemental two-hour deposition. But without a complete production of documents related to the study, a (truncated) deposition cannot alleviate the prejudice to JHU. JHU proposed that Dr. Ryan not rely on his post-September 1 document productions, but Alcon effectively rejected this proposal by insisting that any cross-examination of Dr. Ryan challenging his personal vit-buckle practice (*i.e.*, arguments JHU was entitled to make even before Dr. Ryan's 2018 productions) would open the door for Dr. Ryan to rely on his untimely and incomplete productions.  (Ex. 8 at 4/21, 4/23,  4/28 and 5/8/2018 emails.)

[11] "The [Rule 26] disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-cv-915, 2017 U.S. Dist. LEXIS 202842, at *5 (D. Del. Dec. 11, 2017) (quoting Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments). This broad disclosure obligation exists to ensure that "'sufficiently in advance of trial[,] opposing

"the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Alcon and Dr. Ryan's Rule 26 violation is neither justified nor harmless. Dr. Ryan had the ability to produce all of the documents sought by JHU's subpoena, but did not do so, and the resulting prejudice to JHU is substantial.

Courts in the Third Circuit analyze the exclusion of evidence under Rule 37(c) using the *Pennypack* factors. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–905 (3d Cir. 1977). Each of the factors weighs in JHU's favor: *(1) Prejudice:* Dr. Ryan's supplemental productions are prejudicial because they will be used to support new opinions not disclosed in Dr. Ryan's expert report and to which JHU has had no opportunity to timely and fairly respond. *(2) Ability to cure the prejudice, and (3) disruption of trial:* The prejudice to JHU cannot be cured without significant and expensive additional fact and expert discovery, and even then only if Alcon were to produce all of the documents JHU has been seeking since June 26, 2017—which Alcon has declined to do for nearly a year now. While the Court has postponed trial, it is unlikely all necessary discovery could be had in time for a new trial. This three-year-old case should not be delayed yet again, as such delay is itself highly prejudicial to JHU. *(4) Bad faith or willfulness:* Dr. Ryan and Alcon's decision to limit document production relating to the study, and Alcon's history of similar misconduct, strongly suggests their misconduct has been willful.

JHU respectfully requests that the Court enter an order precluding Alcon from introducing any documents or testimony about any data, conclusions, opinions or publications relating to Dr. Ryan's study that were not disclosed before the September 1, 2017 close of expert discovery.

---

parties have a reasonable opportunity to prepare for effective cross examination' of each other's experts." *Id.* (quoting Fed. R. Civ. P. 26 adv. committee's notes).

27

**JHU MIL #8:  Defendants Should Be Precluded From Introducing Their Own Patents Into Evidence As Well As Undisclosed Expert Opinion Testimony That Defendants' Accused Products Practice Their Patents.**

JHU respectfully requests that the Court enter an order *in limine* precluding Alcon from introducing evidence that Alcon owns patents covering the accused products. None of Alcon's patents was identified by Alcon during fact discovery as relevant to any issue in the case. Bringing them into the trial will be highly likely to confuse the jury. JHU also requests the exclusion of any undisclosed expert opinion testimony, in particular from Mr. Barry Copeland, seeking to link the claims of patents assigned or licensed to Alcon to the Alcon products accused in this action.

JHU previously filed a *Daubert* motion to exclude Alcon's disclosed experts from offering opinions that the accused products practice Alcon's patents because those opinions had no analytic support. Magistrate Judge Fallon recommended denial of JHU's motion observing that certain evidence that Alcon marks its products would be admissible. (D.I. 294 at 24.)   Judge Fallon, however, was not asked to consider Rule 403, the admissibility of the patents themselves, or the admissibility of then-undisclosed expert opinions. JHU's present motion is directed to these issues.

**C.     Procedural Background**

On March 8, 2016, JHU served Interrogatory No. 18 ("Rog. 18"), which asked Alcon, in relevant part, "For each Accused Product and Related Device that Alcon has developed since 2002…(c) identify any patent that You contend covers any version of each such product." (D.I. 202, Ex. 2 at 14). Alcon refused to provide a substantive response and JHU moved to compel. On July 21, 2016, Magistrate Judge Fallon granted JHU's motion in part. (D.I. 67 at 16-18 ("Alcon is ordered to respond to this interrogatory as to the aforementioned Accused Products for the six year period under the Default Discovery Standard.")). On September 15, 2016, Alcon served its Second Supplemental Response to Rog. 18, which identified 5 product brochures pursuant to Fed. R. Civ. Proc. 33(d). (Ex. 11 at 27-28.) None of these documents identified any Alcon patent, nor did

28

Alcon's response. On February 22, 2017, Alcon served its Third Supplemental Response to Rog. 18, which was unchanged from the second. (D.I. 202, Ex. 3 at 28-29.)

On October 27, 2017, *two months after the close of expert discovery*, Alcon served its Fourth Supplemental Response to Rog. 18. This response identified three new documents, 59 patents, the fact deposition of Dr. Ryan, and cited to 74 paragraphs from Dr. D'Amico's expert report. (D.I. 238, Ex. 16 at 34-36.) As to Dr. D'Amico's report, he wrote that he "understand[s] that Alcon has patents covering or related to" its trocars, cannulas, vitreous cutters, light sources, hand-held instruments and the Constellation Vision System. (D.I. 220, Ex. 24, June 6, 2017 D'Amico Rpt., ¶¶ 132, 140, 147, 155, 162, 177-178.) In deposition, however, Dr. D'Amico explained that he did not actually investigate this issue, performed no comparison of the claims of Defendants' patents to the Accused Products, and did not even read Defendants' patents. Instead, Dr. D'Amico testified that his understanding of the issue came from Defendants' lawyers. (*See* D.I. 220, Ex. 25, D'Amico Dep. Tr. at 225-226.) Of particular relevance to this motion, Alcon's Fourth Response instead identified "Barry Copeland as an individual with knowledge regarding Alcon's patents covering its products." (D.I. 238, Ex. 16 at 36.) Mr. Copeland, however, submitted no expert report on this or any other topic.

### D.   Alcon Should Not Be Permitted to Publish or Introduce Its Patents Into Evidence

Alcon has argued that its patents are relevant to issues of damages. (D.I. 235 at 20.) Certainly, Alcon is free to tell the jury about its efforts to develop the accused products and what Alcon allegedly contributed beyond JHU's patented technology. Doing so, however, does not require Alcon to show the jury that it supposedly secured patents on certain aspects of those products. Introducing Alcon patents alleged to be practiced by the accused products—an opinion that has not been established through expert testimony—is certainly likely to confuse and mislead

the jury. As many courts confronting this issue have found, a jury can easily come to believe that the defendant cannot infringe the asserted patent if the defendant has patents of its own on the accused products. *Glaros v. H.H. Robertson Co.*, 797 F.2d. 1564 (Fed. Cir. 1986) (affirming trial court's exclusion of defendant's patent on the accused product and finding the "[i]ntroduction of that evidence would have injected frolics and detours and would have required introduction of counter-evidence, all likely to create side issues that would have unduly distracted the jury from the main issues."); *Oxbo Int'l Corp. v. H&S Mfg. Co.*, No. 15-cv-292-jdp, 2017 U.S. Dist. LEXIS 87649 (W.D. Wis. June 7, 2017) (excluding evidence of defendant's patents due to possible jury confusion); *Cameco Industries, Inc. v. Louisiana Cane Manufacturing*, No. 92-3158, 1995 WL 468234 at *14-17 (E.D. La. July 27, 1995) (same).

While Alcon is permitted to mention that the accused products or their packaging are marked with patent numbers, JHU requests that Alcon be precluded from introducing the patents themselves into evidence. Alcon never identified those patents during discovery and the jury does not need to review them to resolve issues of damages and apportionment. JHU also requests a clear limiting instruction explaining to the jury that having patents on the accused products provides Alcon absolutely no defense to JHU's claim of infringement.

### E.   Alcon Should Not Be Permitted to Introduce Testimony Linking Its Patents to the Accused Products

JHU is concerned, based on the untimely disclosure of Mr. Copeland as a person with knowledge of Alcon's patent marking, that Alcon may seek to elicit opinion testimony from him correlating Alcon's patents with its accused products**.** As the Court has heard, Mr. Copeland was an in-house patent attorney for Alcon. Mr. Copeland is expected to testify at trial concerning Alcon's opinions of counsel on JHU's patent, of which he was the sole recipient. Mr. Copeland should not be permitted to discuss Alcon's patents or opine that those patents are practiced by

Alcon's accused products because such testimony would require undisclosed expert analysis.

Alcon marks its products with patent numbers and also has an online document that purports to satisfy the virtual patent marking provisions of 35 U.S.C. §287(a). (*See* D.I. 212, Ex. G24.) As noted above, none of Alcon's experts is qualified to link any patent assigned to Alcon to the accused products because none of them did the analysis. JHU is concerned that Alcon will seek to fill this void with testimony from Mr. Copeland—that he or other members of Alcon's legal team performed a legal analysis which led to and supports Alcon's product marking. Any such testimony would require a combination of legal and technical analysis, even though Mr. Copeland was never identified as an expert and did not submit an expert report. If allowed, JHU would be deprived of an understanding of how Mr. Copeland reached his opinions and the ability to test those opinions in deposition, and through contrary opinion testimony of JHU's own experts. Such testimony is precluded by Fed. R. Civ. Proc. 26(a)(2) and Fed. R. Evid. 702 and 801. Plainly, Alcon's marking documents themselves do not provide sufficient facts, data, or indicia that reliable principles or methods were applied in concluding that the accused products practice Alcon's patents. Such testimony would also necessarily and improperly be "based on specialized knowledge within the scope of Rule 702" in contravention of Fed. R. Evid. Rule 701(c). *See* Rule 701 Advisory Comm. Notes ("By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson."). Because Alcon refused to provide any information explaining how its accused products practice its patents, despite an order compelling disclosure of this information, any effort by Alcon to backfill its case through Mr. Copeland would be prejudicial to JHU, contrary to the Court's motion to compel ruling and Rule 403, and should not be permitted.

Dated:  May 15, 2018                    FISH & RICHARDSON P.C.


By:  /s/ *Douglas E. McCann*
     Douglas E. McCann (#3852)
     Martina Tyreus Hufnal (#4771)
     Kelly Allenspach Del Dotto (#5969)
     222 Delaware Avenue, 17th Floor
     P. O. Box 1114
     Wilmington, DE 19899-1114
     Email:  DMcCann@fr.com; Hufnal@fr.com;
     KAD@fr.com
     Telephone:  (302) 652-5070
     Facsimile:  (302) 652-0607

     Frank E. Scherkenbach
     Kenton W. Freeman, Jr.
     One Marina Park Drive
     Boston, MA  02210
     Email: scherkenbach@fr.com
     Telephone:  (617) 542-5070
     Facsimile:  (617) 542-8906

     Todd G. Miller
     12390 El Camino Real
     San Diego, CA 92130
     Email:  miller@fr.com
     Telephone: (858) 678-5070
     Facsimile: (858) 678-5099


**ATTORNEYS FOR PLAINTIFF**
**THE JOHNS HOPKINS UNIVERSITY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2018, a true and correct copy of **THE JOHNS**

**HOPKINS UNIVERSITY'S MEMORANDUM IN SUPPORT OF ITS MOTIONS *IN***

***LIMINE* (NOS. 1-8)** was served on the following counsel of record in the manner indicated.

## <u>VIA ELECTRONIC MAIL</u>

William A. Rakoczy
Paul J. Molino
Deanne M. Mazzochi
Rachel. L. Pernic Waldron
John D. Polivick
Jeffrey A. Marx
Katie A. Boda
Erin M. Forbes
Kevin P. Burke
Gregory A. Duff
Rakoczy Molino Mazzochi Siwik LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654

Jack B. Blumenfeld
Rodger D. Smith, II
Stephen J. Kraftschik
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

JHU/Alcon.Defendants@rmmslegal.com

/s/ *Douglas E. McCann*
DOUGLAS E. McCANN (#3852)